GREGORY A. BLUE, SBN 275668
gblue@lcpclaw.com
LACHTMAN COHEN P.C.
245 Main Street, Suite 230
White Plains, New York 10601
Telephone/Facsimile: (914) 505-6654

GARY J. GORHAM, SBN 171061
ggorham@raskinlawllp.com
RASKIN GORHAM ANDERSON LAW
11333 Iowa Avenue
Los Angeles, California 90025
Telephone: (310) 202-5544
Facsimile: (310) 202-5540

*Attorneys for Plaintiff*
*Greycroft Partners IV, LP*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GREYCROFT PARTNERS IV, LP, a Delaware Limited Partnership,<br><br>*Plaintiff*,<br>v.<br>KATHRYN RETZER, an individual,<br>*Defendant*. | **Case No. 2:19-CV-9759**<br><br>**GREYCROFT PARTNERS IV, LP's COMPLAINT FOR:**<br>(i) **Securities Fraud (Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5 promulgated thereunder); and**<br>(ii) **Common Law Fraud**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Greycroft Partners IV, LP ("Greycroft" or "Plaintiff"), by and through its undersigned counsel, allege causes of action against Defendant Kathryn Retzer ("Ms. Retzer") as follows:

1

**COMPLAINT**

**INTRODUCTION**

1. This Complaint for securities fraud and common law fraud arises out of Ms. Retzer's false and misleading statements, and material omissions, in connection with the purchase and sale of securities.

2. As of March 7, 2018, Ms. Retzer, along with Patrick Herning ("Mr. Herning"), was one of two members of the Board of Directors ("Board") of 11 Honoré, Inc. ("11H" or "Company").

3. On March 7, 2018, Ms. Retzer signed an *Action By Unanimous Written Consent Of The Board Of Directors Of 11 Honore, Inc.* ("Board Consent"). As evidenced by the Board Consent, Ms. Retzer approved a Series A and Series A-1 Preferred Stock Financing ("Series A Financing") and, as part of that approval, "adopted and approved in all respects" the *Series A and Series A-1 Preferred Stock Purchase Agreement* ("Purchase Agreement").

4. The Purchase Agreement contained certain representations and warranties including, as is relevant here, representations and warranties that:

   a. "The employment of each employee of the Company is terminable at the will of the Company."

   b. "Except for the agreements explicitly contemplated hereby, there are no agreements, understandings, instruments, contracts, proposed transactions, judgments, orders, writs or decrees to which the Company is a party or by which it is bound which may involve (a) obligations (contingent or otherwise) of, or payments to, the Company in excess of $25,000."

("Representations and Warranties").

5. Greycroft purchased stock as part of the Series A Financing, pursuant to the Purchase Agreement.

6. The Company terminated Ms. Retzer's employment in July 2018.

7. In October 2018, Ms. Retzer commenced an action in California Superior Court ("Superior Court Action"[1]) in which she alleges that, prior to the time that she adopted and approved in all respects the Purchase Agreement, including the Representations and Warranties, she entered into a contract with the Company that prohibited the Company from terminating her other than for "good cause."

8. Specifically, Ms. Retzer's First Amended Complaint in the Superior Court Action ("FAC") alleges that:

   a. "In January 2017, Retzer and Herning [on behalf of the Company] orally agreed that … (viii) Retzer would not be removed from the Company without good cause. [FAC ¶ 2, see also id. at ¶ 27 ("Herning orally agreed with Retzer … that she would not be removed from the Company without good cause")]

   b. "On multiple occasions after forming this oral employment contract, including in or around July/August 2017 [and] January 2018… Herning [on behalf of the Company] reaffirmed the existence and terms of this oral employment contract between Retzer and 11 Honoré. [FAC ¶ 2, see also id. at ¶ 47 (same)]

9. Ms. Retzer has sworn to the truth of these allegations – that in January 2017 she formed an express contract, which prohibited her termination other than for "good cause" – in multiple discovery responses in the Superior Court Action.

---

[1] The Superior Court Action is *Kathryn Retzer v. Patrick Herning; 11 Honoré, Inc.; Redpoint Ventures; Greycroft Partners IV, LP,* Superior Court for the State of California, County of Los Angeles, Central District, Case No. BC724404.

10. Ms. Retzer, therefore, has stated under penalty of perjury that the Representations and Warranties, which she approved and authorized in connection with the Series A Financing, were false.

11. If Ms. Retzer obtains an award of damages or equitable relief against the Company based upon the existence of an express contract formed with the Company prior to the closing of the Series A Financing, then she is liable to Greycroft for affirmatively misrepresenting her employment status and omitting material information.

12. Moreover, whatever the outcome of Ms. Retzer's claims in the Superior Court Action, Ms. Retzer has sworn to statements demonstrating that she is liable for concealing her *belief* that she had a contract with the Company, while affirmatively representing the opposite. Her concealment of her claim to have an employment contract has, in itself, caused Greycroft damages.

## PARTIES

13. Greycroft is a Delaware limited partnership with a principal place of business at 292 Madison Avenue, 20th Floor, New York, NY 10017.

14. Upon information and belief, Ms. Retzer is an individual residing in Los Angeles County, California.

## JURISDICTION AND VENUE

15. This Court has jurisdiction over the subject matter of this action pursuant to 15 U.S.C. § 78aa(a), which provides that "[t]he district courts of the United States and the United States courts of any Territory or other place subject to the jurisdiction of the United States shall have exclusive jurisdiction of violations of this title [15 U.S.C. §§ 78a *et seq*.] or the rules and regulations thereunder, and of all suits in equity and actions at law brought to enforce any liability or duty created by this title [15 U.S.C. §§ 78a *et seq*.] or the rules and regulations thereunder."

16. This Court has supplemental jurisdiction over Plaintiff's common law fraud claim pursuant to 28 U.S.C. § 1367(a) on the ground that it is so related to Plaintiff's federal claim, which is within this Court's original jurisdiction, that it forms part of the same case or controversy under Article III of the United States Constitution.

17. Venue is proper in this Court, pursuant to 28 USC § 1391(b)(1) because the defendant resides in this District and 28 USC § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this District.

**FACTS COMMON TO ALL CAUSES OF ACTION**

18. On or about August 2, 2017, Greycroft made a "Seed Round" investment in 11H with the purchase of a Convertible Note in the principal amount of $500,000 ("Convertible Note").

19. In connection with Greycroft's Convertible Note investment, pursuant to a "Management Rights Letter" dated August 2, 2017, Greycroft was entitled to:

   a. "consult with and advise management of the Company on significant business issues, including management's proposed annual operating plans…" and

   b. receive "concurrently with delivery to the Board of Directors… copies of all notices, minutes, consents and other material that the Company provides to its directors…"

20. Thereafter, in January and February 2018, Ms. Retzer and Mr. Herning, the Company's CEO, met with existing and prospective investors concerning a proposed "Series A" investment round that ultimately resulted in the closing of the Series A Financing on March 9, 2018.

21. According to Ms. Retzer, she was a key player in the Series A Financing and actively participated in meetings with investors. [FAC ¶ 24]

22. As a result, the Company secured a commitment to the Series A Financing.

23. On or about March 7, 2018, Ms. Retzer signed the Board Consent in which she, as one of the two members of the Board, "adopted and approved in all respects" the Purchase Agreement, which included the Representations and Warranties.

24. The Board Consent, the Purchase Agreement, and other transaction documents were delivered to Greycroft prior to the closing of the Series A Financing using means and instrumentalities of interstate commerce, namely electronic communications.

25. On or about March 9, 2018, Greycroft, as well as other Series A investors, and the Company fully executed the Purchase Agreement, and the Series A Financing closed on that date.

26. In connection with the Series A Financing, Greycroft purchased 239,211 shares of Series A Preferred Stock and 911,333 shares of Series A-1 Preferred Stock in the Company. The stock purchased by Greycroft in the Series A Financing are referred to herein as the "Securities."

27. In or about July 2018, the Company terminated Ms. Retzer's employment.

28. On or about October 4, 2018, Ms. Retzer commenced the Superior Court Action alleging, among other things, that she had an implied contract with the Company that prevented the Company from terminating her employment other than for "good cause."

29. On April 11, 2019, Ms. Retzer filed the FAC

30. In the FAC, Ms. Retzer alleged that in January 2017, long before the closing of the Series A Financing, she entered into an express oral contract with the Company that prohibited the Company from terminating her employment other that for "good cause."

# FIRST CAUSE OF ACTION
### (Violation of Section 10(b) of the Exchange Act and Rule 10b-5(a) and (c))

31. Plaintiff repeats, reiterates, and realleges each of the allegations in the foregoing paragraphs as if fully set forth herein.

32. Pursuant to Section 10(b) of the Securities Exchange Act of 1934 ("Section 10(b)" and "Exchange Act") and Rule 10b-5 promulgated thereunder ("Rule 10b-5"), it is unlawful "[t]o use or employ, in connection with the purchase or sale of any security … any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors."

33. Pursuant to Rule 10b-5(b), it is unlawful "[t]o make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading."

34. Ms. Retzer approved and signed the Board Consent in which she adopted and approved the Representations and Warranties, which state:

> "The employment of each employee of the Company is terminable at the will of the Company."

> "Except for the agreements explicitly contemplated hereby, there are no agreements, understandings, instruments, contracts, proposed transactions, judgments, orders, writs or decrees to which the Company is a party or by which it is bound which may involve (a) obligations (contingent or otherwise) of, or payments to, the Company in excess of $25,000."

35. At no time prior to the closing of the Series A Financing on March 9, 2019 did Ms. Retzer inform Greycroft that Ms. Retzer entered into a contract with the Company

pursuant to which the Company could not terminate Ms. Retzer's employment other than for "good cause," or that Ms. Retzer believed that to be true.

36.  Ms. Retzer's First Amended Complaint in the Superior Court Action states that, long before the Series A Financing, she entered in an express oral contract with the Company that prohibited the Company from terminating her employment other than for "good cause":

> "In January 2017, Retzer and Herning [on behalf of the Company] orally agreed that … (viii) Retzer would not be removed from the Company without good cause." [FAC ¶ 2, *see also id*. at ¶ 27 ("Herning orally agreed with Retzer … that she would not be removed from the Company without good cause")]
>
> "On multiple occasions after forming this oral employment contract, including in or around July/August 2017 [and] January 2018… Herning [on behalf of the Company] reaffirmed the existence and terms of this oral employment contract between Retzer and 11 Honoré. [FAC ¶ 2, see also id. at ¶ 47 (same)]

37.  In her responses to discovery in the Superior Court Action, Ms. Retzer repeated and expounded upon her claim to have entered into an express oral contract with the Company long before the Series A Financing.

38.  In response to Defendants *11 Honoré's, Redpoint Ventures', And Greycroft Partners IV'S First Set of Form Interrogatories – Employment Law*, Ms. Retzer stated that "her employment relationship with 11 Honoré was not 'at will.'" Ms. Retzer verified that statement under penalty of perjury.

39. In the same responses, Ms. Retzer stated that in January 2017, "Herning [on behalf of the Company] orally agreed with Retzer she would be at the Company if he was there, that he would be a loyal business partner to her, that the Company would treat her fairly, and that she would not be removed from the Company without good cause." Ms. Retzer verified that statement under penalty of perjury.

40. In the same responses, Ms. Retzer stated that she and Mr. Herning (on behalf of the Company) discussed and confirmed the terms of her oral employment contract again in February 2017, July 2017, August 2017, and January 2018. Ms. Retzer verified those statements under penalty of perjury.

41. In numerous other discovery responses in the Superior Court Action, Ms. Retzer stated that, as of January 2017, and continuing through July 2018, she was party to an express oral contract with the Company that prohibited the Company from terminating her employment other than for "good cause." *See e.g. Plaintiff Kathryn Retzer's Responses To Defendant 11 Honoré's First Set Of Special Interrogatories* Nos 12 and 14; *Plaintiff Kathryn Retzer's Responses To Defendant Greycroft Partners IV, LP's First Set Of Special Interrogatories* Nos. 9 and 10; *Plaintiff Kathryn Retzer's Responses To Defendant Redpoint Ventures' First Set Of Special Interrogatories* Nos. 24 and 25. Ms. Retzer verified each of those responses under penalty of perjury.

42. If it is true, as Ms. Retzer has now repeatedly stated under penalty of perjury, that prior to the closing of the Series A Financing Ms. Retzer entered into a contract with the Company pursuant to which the Company could not terminate Ms. Retzer's employment other than for "good cause," then Ms. Retzer had actual knowledge that the Representations and Warranties, which she adopted, approved, and caused to be made to Plaintiff, were false, incomplete, and/or misleading.

9
COMPLAINT

43. If it is true, as Ms. Retzer has now repeatedly stated under penalty of perjury, that prior to the closing of the Series A Financing Ms. Retzer entered into a contract with the Company pursuant to which the Company could not terminate Ms. Retzer's employment other than for "good cause," then Ms. Retzer omitted to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading. Specifically, she omitted to inform Plaintiff, that she entered into a contract with the Company pursuant to which the Company could not terminate Ms. Retzer's employment other than for good cause.

44. If it is true, as Ms. Retzer has now repeatedly stated under penalty of perjury, that prior to the closing of the Series A Financing Ms. Retzer entered into a contract with the Company pursuant to which the Company could not terminate Ms. Retzer's employment other than for "good cause," then Ms. Retzer, directly and indirectly, by use of the means or instruments of transportation or communication in interstate commerce or by use of the mails, in connection with the purchase or sale of securities, as described herein, has knowingly and willfully made untrue statements of a material fact and omitted to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, which have operated as a fraud or deceit upon Plaintiff.

45. Greycroft justifiably relied on the affirmative Representations and Warranties in the Purchase Agreement, which Ms. Retzer caused to be made to Greycroft, and which Ms. Retzer fully adopted and approved in the Board Consent. Among other things, Greycroft reasonably relied upon the belief that Ms. Retzer would not adopt and approve the Representations and Warranties if she had actual knowledge that they were false.

46. Ms. Retzer's omissions were material because had Ms. Retzer disclosed to Greycroft that she had entered into a contract with the Company pursuant to which the Company could not terminate Ms. Retzer's employment other than for good cause, that information would have been viewed by Greycroft, and by any reasonable investor, as having significantly altered the total mix of information made available in connection with the purchase and sale of the Securities.

47. In addition, whether or not Ms. Retzer actually had an express employment contract, the mere fact that she *believed* that she had an express employment contract that prohibited her termination other than for "good cause" is a material fact that she was required to disclose in connection with the Series A Financing. Her belief in the existence of that contract – contrary to the Representations and Warranties – has led her to embroil 11H, its CEO, as well as Greycroft in the Superior Court Action, and the expenditure of significant sums in the defense of her claims.

48. In addition, if Ms. Retzer believed prior to the closing of the Series A Financing that she had an express employment contract that prohibited her termination other than for "good cause", then Ms. Retzer had a duty to state as such in in order to make the Representations and Warranties, in the light of the circumstances under which they were made, not misleading.

49. The risk of litigation from the termination of an employee is precisely the type of information that Greycroft sought in the Representations and Warranties. Ms. Retzer's undisclosed belief that her employment was other than "at will" was a significant risk factor that she was obligated to disclose – especially in light of her adoption and approval of statements expressly disclaiming the existence of any such contracts.

50. The foregoing material misstatements and omissions were made in connection with Plaintiff's purchase of the Securities.

51. The foregoing material misstatements and omissions were made with the actual intent to deceive, manipulate, or defraud Plaintiff. Ms. Retzer's intent to deceive is evidenced by the following facts:

    a. Ms. Retzer claims to have entered into an express contract with the Company in January 2017, a fact that (if true) she was aware of at the time that she, as a member of the Board, adopted and approved the Representations and Warranties;

    b. Ms. Retzer signed the Board Consent, which adopted and the Purchase Agreement, including the representations and warranties contained in the Purchase Agreement while having (according to her) actual knowledge of an express contract that prohibited the Company from terminating her employment other than for "good cause."

52. Thus, according to Ms. Retzer's sworn statements, she had actual knowledge of the falsity of the Representations and Warranties at the time that that she adopted and approved them.

53. If it is true, as Ms. Retzer has repeatedly stated under penalty of perjury, that prior to the closing of the Series A Financing, she entered into a contract with the Company pursuant to which the Company could not terminate her employment other than for "good cause," then Greycroft was damaged by the misstatements and omissions.

54. Specifically, Greycroft was damaged, will be damaged, and may incur damages in at least the following ways:

    a. by purchasing securities in the Series A Financing at a price higher than Greycroft would have paid had Ms. Retzer

disclosed her assertion that her employment could be terminated only for "good cause";

b. due to the loss of value of the Securities by reason of Ms. Retzer's belated disclosure of her assertion that her employment could be terminated only for "good cause"; and

c. by incurring costs and legal fees in the Superior Court Action that the Representations and Warranties were specifically designed to avoid.

55. By reason of the foregoing, Ms. Retzer violated Section 10(b) and Rule 10b-5 and is liable to Greycroft in an amount to be determined at trial.

**SECOND CAUSE OF ACTION**
**(Common Law Fraud)**

56. Plaintiff repeats, reiterates, and realleges each of the allegations in the foregoing paragraphs as if fully set forth herein.

57. For the reasons stated above and, in particular, as set forth in detail in Plaintiff's First Cause of Action, Ms. Retzer is liable to Greycroft for common law fraud in connection with the Series A Financing.

58. By reason of the foregoing, Ms. Retzer is liable for damages to Greycroft in an amount to be determined at trial including actual damages and exemplary damages pursuant to Cal. Civ. Code § 3294, interest pursuant to Cal. Civ. Code § 3288, and damages resulting after the commencement of this action pursuant to Cal. Civ. Code § 3283.

**JURY DEMAND**

59. Plaintiff demands a jury trial of all issues so triable.

# PRAYER FOR RELIEF

WHEREFORE, Greycroft respectfully requests that the Court enter judgment in favor of Greycroft and against Kathryn Retzer granting:

1. actual and statutory damages, in an amount to be determined at trial;
2. equitable relief;
3. exemplary damages;
4. prejudgment and post-judgment interest to the fullest extent allowable by law;
5. costs of this action; and
6. such other relief as this Court deems just and proper.

DATED: November 14, 2019  **LACHTMAN COHEN P.C.**

By: /s/ Gregory A. Blue
      Gregory A. Blue (SBN 275668)

**RASKIN GORHAM ANDERSON LAW**

By: /s/ Gary J. Gorham
      Gary J. Gorham (SBN 171061)

*Attorneys for Plaintiff*
*Greycroft Partners IV, LP*